# EXHIBIT 04

Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

CIVIL ACTION NO.: 2:20-cv-1977

-------------------------------x

THE PNC FINANCIAL SERVICES

GROUP, INC.,

          Plaintiff,

     Vs.

PLAID, INC.,

          Defendant.

-------------------------------x

"HIGHLY CONFIDENTIAL"

VIDEOTAPE DEPOSITION OF

MAUREEN M. CHAKRABORTY, Ph.D.

VIA ZOOM VIDEOCONFERENCE

December 19, 2023

9:04 a.m.

Case No. PA6341699

Reported by:

Maureen Ratto, RPR, CCR

Page 352

CHAKRABORTY - HIGHLY CONFIDENTIAL

technology, correct?

A.    In his contributed capital?

Q.    Yes.

A.    Correct. He attributes all growth in value to -- actually, I'm going to restate that. His methodology assumes that all the allocation of growth and equity should be allocated based on occurrence -- on occurrences.

So there is no room, given his method, for there to be any form of return to investor who actually invested cash or to Plaid, itself. Under his methodology, it would all go to the banks --

Q.    Okay.

A.    -- which doesn't make any sense because then you would have no equity investors.

Q.    Can you explain that?

A.    Sure. So the way Mr. Lundelius lays out his contributed capital is he -- he's saying that Plaid's contribution of occurrences is worth

CHAKRABORTY - HIGHLY CONFIDENTIAL
about $6 million, right? And that $6 million of value based on share price, right, would yield about 200-something million as of 2021 and a 100-something million as of 2022.

So if he -- I mean, first of all, for all the reasons I say I think that's not the right way to measure the value in this case because A, PNC can't contribute customers, it can only contribute the license, right? PNC has no control over, you know, whether or not its customers can choose a fintech app or how many fintech apps that they choose. So they can't say I'm going to give you occurrences. They don't have that influence. That's the customer's decision.

They could say I'm going to contribute my intellectual property to you or my trademark to you and then -- but that's worth something different than the occurrences. So he's valuing the wrong thing, in my opinion.

CHAKRABORTY - HIGHLY CONFIDENTIAL

But putting that aside for a second, the fact that he is valuing it and saying that PNC -- the value of the PNC occurrences should get a return equal to the growth in the business would imply that if every bank were to do that, then all of the return would go to the banks. So what would be left over for the investors who actually contributed cash?

So I'm saying it's a nonsensical way to think about it. And the reason why he -- the result ends up like that is because he assumes that the PNC occurrence is a perpetual asset.  And that's what I was saying earlier, the value of the asset over the life of Plaid is very finite, it's very small relative to the life of Plaid. That's why you get this sort of bizarre conclusion.

Q.   Did you consider an adjustment to account for the finite life that you believe that investment would have?

A.   So if you do an adjustment based on the finite life, that is what

Page 355

CHAKRABORTY - HIGHLY CONFIDENTIAL

the lost profits analysis or disgorgement analysis is doing is it's taking the value of an occurrence over the life that it actually has value. That is what that is.

That is why I'm saying when you have this method, this method doesn't make sense to me for the reasons that I'm saying, because you've already calculated and determined what the value of that asset already is over here and you've already said it's worth 18. So it's -- it doesn't make sense to me to turn around and say but it's really worth 117 million, right? So there is a disconnect here. That's all I'm pointing out.

Q.   And so Mr. Lundelius in his contributed capital theory is clear that the methodology he's using is considering a hypothetical transfer of shares, correct?

MS. ZOSCHAK:  Object to form.

Q.   He's not suggesting that -- he's not suggesting that one would, as

Page 388

C E R T I F I C A T E

I, MAUREEN M. RATTO, a Registered Professional Reporter, do hereby certify that prior to the commencement of the examination, MAUREEN M. CHAKRABORTY, Ph.D. was sworn by me to testify the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a true and accurate transcript of the proceedings as taken stenographically by and before me at the time, place and on the date hereinbefore set forth.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in this action.

MAUREEN M. RATTO, RPR

License No. 817125

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830