**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PNC FINANCIAL SERVICES GROUP, INC., | |
| Plaintiff | Civil Action No. 2:20–cv–1977 |
| v. | The Honorable Mark R. Hornak |
| PLAID INC., | |
| Defendant. | |

**PLAID'S REPLY IN SUPPORT OF PLAID'S MOTION TO EXCLUDE EXPERT**
**TESTIMONY OF CHARLES LUNDELIUS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    I.    Mr. Lundelius's Contributed Capital Analysis Should Be Excluded Under
Rule 702. ............................................................................................................... 2

        A. Contributed Capital Damages Are Not Recognized in Lanham Act Cases
and Therefore Do Not "Fit" Under Rule 702. .................................................. 2

        B. Mr. Lundelius's Contributed Capital Analysis Is Unprecedented And
Unreliable. ...................................................................................................... 5

    II.    Mr. Lundelius's Disgorgement Opinion Is Unreliable. ......................................... 7

    III.    Mr. Lundelius's Actual Damages Calculations Are Unrelated To The
Alleged Trademark Infringement At Issue In This Case. ..................................... 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Am. Eagle Outfitters, Inc. v. Walmart, Inc.*,
2023 WL 1778786 (W.D. Pa. Feb. 6, 2023) ........................................................................ 8, 10

*Avco Corp. Turn & Bank Holdings, LLC*,
659 F. Supp. 3d 483 (M.D. Pa. 2023) .................................................................................... 3

*Banjo Buddies, Inc. v. Renosky*,
399 F.3d 168 (3d Cir. 2005) ............................................................................................... 5, 8

*Branch v. Temple University*,
2021 WL 2823071 (E.D. Pa. July 7, 2021) ............................................................................ 9

*Burger King Corp. v. Mason*,
855 F.2d 779 (11th Cir. 1988) ............................................................................................... 3

*Caesars World, Inc. v. Venus Lounge, Inc.*,
520 F.2d 269 (3d Cir. 1975) .................................................................................................. 4

*Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*,
855 F.3d 163 (3d Cir. 2017) .................................................................................................. 3

*Clinchfield R. Co. v. Lynch*,
784 F.2d 545 (4th Cir. 1986) ................................................................................................. 6

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) .................................................................................................. 9

*Groobert v. President & Dirs. of Georgetown Coll.*,
219 F. Supp. 2d 1 (D.D.C. 2002) .......................................................................................... 6

*Gucci Am., Inc. v. Daffy's Inc.*,
354 F.3d 228 (3d Cir. 2003) ............................................................................................... 1, 8

*In re Johnson & Johnson Talcum Powder Mktg., Sales Pracs. & Prods. Litig.*,
509 F. Supp. 3d 116 (D.N.J. 2020) ....................................................................................... 9

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d. Cir. 1994) ................................................................................................... 6

*In re Zoloft (Sertraline Hydrochloride) Prods. Liability Litig.*,
858 F.3d 787 (3d Cir. 2017) .................................................................................................. 6

*Kars 4 Kids Inc. v. Am. Can!*,
  8 F.4th 209 (3d Cir. 2021) ................................................................................ 2

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*,
  2016 WL 3545529 (D.N.J. June 29, 2016) ....................................................... 4

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
  40 F.4th 454 (6th Cir. 2022) ..................................................................... 3, 5, 8, 9

*Merck Eprova AG v. Gnosis S.p.A.*,
  760 F.3d 247 (2d Cir. 2014) .............................................................................. 3

*Spintouch, Inc. v. Outform, Inc.*,
  2022 WL 17363902 (C.D. Cal. Sept. 28, 2022) ............................................... 9

*Rowland v. Novartis Pharms. Corp.*,
  9 F. Supp. 3d 553 (W.D. Pa. 2014) .................................................................. 6

*Taylor v. Meirick*,
  712 F.2d 1112 (7th Cir. 1983) .......................................................................... 8

*Vino 100, LLC v. Smoke on the Water, LLC*,
  864 F. Supp. 2d 269 (E.D. Pa. 2012) ............................................................... 4

**Statutes**

15 U.S.C. § 1117(a) ............................................................................... 1, 2, 4, 8

**PRELIMINARY STATEMENT**

PNC's opposition makes critical concessions, including that Mr. Charles Lundelius's methodologies are "novel," PNC's Mem. in Opp. to Plaid's Mot. to Exclude Mr. Lundelius, ECF No. 281, at 7 ("Opp."), and that he did not consider relevant evidence in the record, *id.* at 12-14. Indeed, PNC makes no attempt to justify its silence on many of the issues raised in Plaid's opening brief.   Despite PNC's repeated, aggressive references to Plaid's so-called "counterfeiting campaign," *see, e.g., id.* at 1—a laughable description given that Plaid has worked with, and continues to work with, thousands of banks, including PNC, and was fully transparent with PNC about the design of Plaid Link for years prior to this lawsuit—it cannot change the fact that its damages expert offers three opinions that fail to satisfy the exacting standards of Rule 702.

It remains abundantly clear that Mr. Lundelius's contributed capital analysis is untethered to the enumerated damages permitted by the Lanham Act, *see* 15 U.S.C. § 1117(a), and is an unprecedented, untested, and unreliable methodology for calculating damages in a trademark infringement case.   Mr. Lundelius's disgorgement analysis fares no better because he fails to address evidence in the record bearing on whether revenue or profits may be "attributable," directly or indirectly, to Plaid's use of PNC Marks.  *See Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 242 n.15 (3d Cir. 2003).   Finally, all of the actual damages sought by Mr. Lundelius arise from an incident unrelated to Plaid's prior use of PNC's marks.

The court should exclude Mr. Lundelius's opinions.

1

**ARGUMENT**

**I.    Mr. Lundelius's Contributed Capital Analysis Should Be Excluded Under Rule 702.**

> **A. Contributed Capital Damages Are Not Recognized in Lanham Act Cases and Therefore Do Not "Fit" Under Rule 702.**

PNC does not dispute, and indeed recognizes, that the Lanham Act provides for three categories of damages: "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a); *see also Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 224 (3d Cir. 2021); Plaid's Mem. ISO Mot. to Exclude Mr. Lundelius at 1, ECF No. 248 ("Mot."); Opp. at 2-3. In fact, Mr. Lundelius's expert report includes opinions on the alleged damages in this case under the first two categories—gross profits and plaintiff's actual damages. *See* Expert Report of Mr. Charles Lundelius ("Lundelius Rep."), ECF No. 248-1, ¶¶ 29, 32-33.

But his opinion on contributed capital goes too far and is outside the bounds of recovery for a Lanham Act action. Despite referencing the Court's equitable power under the Lanham Act, PNC still cannot point to *any* trademark case where monetary relief was calculated by speculating about the value a plaintiff's customers provided to the growth of a defendant company. It is not a profit measure, nor a measure of plaintiff's actual damages, nor a measure of the costs of the action. At its core, PNC's defense of Mr. Lundelius's contributed capital theory is to shoehorn it into the Court's statutory equitable discretion. *See* Opp. at 2-4. PNC's argument fails for many reasons.

Most importantly, the contributed capital measure does not fall within any of the clearly enumerated damages categories under the Lanham Act. While PNC argues that contributed capital is appropriate under principles of equity, *see* Opp. at 3, any such award should relate to the enumerated damages categories and applies only "[i]f the court shall *find that the amount of the recovery based on profits is either inadequate or excessive.*" 15 U.S.C. § 1117(a) (emphasis

added).[1]  Nor is the discretion to adjust an award based on defendant's profits without bounds. "[W]here a district court is making an estimate of actual profits under the first alternative," as would be the case here, "its discretion must be within boundaries, and the touchstone is reasonableness."  *Covertech Fabricating, Inc. v. TVM Bldg. Prod., Inc.*, 855 F.3d 163, 176 (3d Cir. 2017); *see also id.* at 177 (describing how both out-of-circuit and Third Circuit precedent, including *Banjo Buddies*, supports this proposition).  For example, "a bare showing of gross sales is not sufficient to fashion an equitable award without some anchor in the record to support a reasonable estimation of actual profits."  *Id.* at 177; *see also Avco Corp. Turn & Bank Holdings, LLC*, 659 F. Supp. 3d 483, 503-05 (M.D. Pa. 2023).  And "where the court lacks a sound basis for extrapolating actual profits, it abuses its discretion by resorting to guesswork."  *Covertech Fabricating, Inc.*, 855 F.3d at 177.

The case law cited by PNC is not to the contrary.  In each case, the court's award under its equitable powers was directly tethered to profits derived from use of the infringing mark.  *See Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 474 (6th Cir. 2022) (rejecting district court's doubling of holder's lost profits for punitive reasons); *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 263 (2d Cir. 2014) (upholding district court's award of damages three times the holder's lost profits to account for "usurp[ed]" market share); *Burger King Corp. v. Mason*, 855 F.2d 779, 782-83 (11th Cir. 1988) (upholding district court's decision to reduce a damages award based on lost profits to account for unprofitable years).

---

[1] In relying on the Lanham Act's "principles of equity," Opp. at 3-4, PNC also effectively concedes that Mr. Lundelius's contributed capital opinion, if not excluded, would not be tried before the jury, but instead be reserved for the Court, *see id.* at 7-8 (arguing that Mr. Lundelius's contributed capital analysis is relevant to *the Court's* exercise of discretion).

3

Here, Mr. Lundelius's theory is not tied to Plaid's actual profits (or the facts of the case), but instead likens Plaid's use of PNC logos in Plaid Link to a "forced investment" in Plaid by PNC during its Series B fundraising round.[2]  Plaid certainly did not grant PNC any common shares during its Series B fundraising round in exchange for use of PNC's marks, nor is there any reason to believe that Plaid *would* have offered such shares, or that PNC would have accepted them as payment.  More importantly, PNC did not have any control over *consumers' decisions* to use either fintech apps or Plaid, and therefore could not have contributed occurrences connected to PNC bank accounts as a form of investment.  *See* Mot. at 4-7.  Any damages award justified by Mr. Lundelius's contributed capital analysis would thus be utterly disconnected from a calculation of Plaid's profits and would force this Court to extrapolate Plaid's actual profits unreasonably and without support in the record.  *See Vino 100, LLC v. Smoke on the Water, LLC*, 864 F. Supp. 2d 269, 288 (E.D. Pa. 2012) ("As used in § 1117, 'damages' [] 'means an award *based on* either actual damages to the plaintiff or actual profits of the infringer[.]'") (quoting *Caesars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975)) (emphasis added).  Mr. Lundelius's contributed capital opinion is so far removed from traditional Lanham Act damages that it does not fit within the bounds of the Court's equitable discretion under the Act and must be excluded.[3]

---

[2]  PNC attempts to analogize Mr. Lundelius's contributed capital analysis to a reasonable royalty.  Opp. at 9.  Plaid agrees that "reasonable royalties" may theoretically be used to measure damages in trademark cases, because royalties are routinely bargained for in the real world.  *See, e.g., Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, 2016 WL 3545529, at *29 (D.N.J. June 29, 2016).  But that is not what Mr. Lundelius did here.  Instead of attempting to calculate a reasonable royalty as a measure of compensation for Plaid's use of PNC's logo, he created a whole new damages methodology completely disconnected from the value of its marks.

[3]  PNC's cursory reference in a footnote to Plaid's "refus[al] to produce" certain information is easily rejected.  Opp. at 8 n.7.  Plaid fully complied with this Court's order to produce valuation documents that were related to PNC.  *See* Order Regarding Resolution of Certain Discovery Disputes, ECF No. 141, at 2 (requiring Plaid to provide PNC with "financial information as to revenue/profit/valuation matters requested by the Plaintiff, but *only as to such matters directly related to Plaintiff PNC*" (emphasis added)).  Plaid confirmed that no such

PNC's reference to the Third Circuit's decision in *Banjo Buddies, Inc. v. Renosky* is not to the contrary.  Opp. at 3-4.  There is no dispute that profits attributed to the infringing mark is a valid form of damages under the Lanham Act, which is supported by the text of the Act itself and by *Banjo Buddies.*  Plaid disputes that Mr. Lundelius's capital contribution analysis is a profit calculation that is recoverable in this case.  On this point, *Banjo Buddies* is indeed instructive. There, the Third Circuit upheld the district court's order requiring defendant to pay "the net profits earned by [the infringing product]."  *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 172 (3d Cir. 2005).  The question was whether the district court erred in using its equitable powers *to estimate* net profits on the infringing product, where the defendant otherwise claimed that it suffered a net loss.  *Id.* at 177-78.  In other words, unlike PNC's position on contributed capital, the equitable damages calculation in *Banjo Buddies* still consisted of a traditional profit analysis.[4]

### B. Mr. Lundelius's Contributed Capital Analysis Is Unprecedented And Unreliable.

Even if this Court determines that it has the discretion to consider a contributed capital analysis in this case as an adjustment to a defendant's traditional profit calculations, it is not sufficient to save Mr. Lundelius's opinion from being excluded under Rule 702 as unreliable.

*First*, PNC concedes that Mr. Lundelius's contributed capital analysis is an unprecedented form of calculating damages in an infringement suit.  *See* Opp. at 7.  And it does not cite to any

---

document existed.  Moreover, *Max Rack* does not stand for the proposition that "discovery shortfalls" are a "basis to enhance damages under the Lanham Act."  Opp. at 8 n.7.  The Sixth Circuit in *Max Rack* actually held the exact opposite—that "the district court *abused its discretion by granting enhanced profits* when its first sanction sufficed to remedy" any discovery shortcomings.  40 F.4th at 475 (emphasis added).

[4] PNC's reference to *Banjo Buddies'* discussion of a windfall also is misleading.  There, the Third Circuit dismissed the defendant's argument that it should only disgorge a portion of its net profits on the infringing product because the plaintiff had a smaller profit margin on the same product.  *See* 399 F.3d at 178.  The general statement about providing any windfall to the plaintiff and not the defendant cannot be used to support a completely new and untested damages model that suggests damages many times greater than any typical, profits-based methodology.

5

case in which Lanham Act damages were calculated this way.  Instead, PNC disingenuously twists Plaid's position.  Plaid does not argue that novel methodologies are *per se* impermissible, *see* Mot. at 7-8, but rather that Mr. Lundelius's contributed capital analysis satisfies none of the indicia of reliability under Rule 702, *see In re Zoloft (Sertraline Hydrochloride) Prods. Liability Litig.*, 858 F.3d 787, 792 (3d Cir. 2017) (listing reliability factors); *see also Paoli II*, 35 F.3d at 742 (same). Not only has Mr. Lundelius never before applied a contributed capital analysis in this context, *see* Deposition of Charles Lundelius 152:1-153:8, ECF No. 248-2 ("Lundelius Tr."), he is also not familiar with any court doing so, *id.* 154:24-155:5.  And neither recognition nor support for his methodology in trademark infringement cases exists in the law or literature.  *See* Lundelius Rep. ¶¶ 51-63.  At bottom, Mr. Lundelius runs afoul of "[t]he *Kumho Tire Co., Meister,* and *Raynor* line of precedent [which] deems expert testimony unreliable when an expert chooses to utilize [his] own unique methodology rather than the proper analysis which is well-known and respected." *Groobert v. President & Dirs. of Georgetown Coll.*, 219 F. Supp. 2d 1, 9 (D.D.C. 2002).

Nor are the cases PNC cites in support persuasive.  In *Rowland v. Novartis Pharms. Corp.*, this Court did not find an unsupported and novel methodology reliable.  9 F. Supp. 3d 553 (W.D. Pa. 2014).  Instead, it found admissible the opinion of an expert who applied a well-established methodology—a differential diagnosis—to reach a novel medical diagnosis, and who provided scientific support for that novel conclusion.  *Id.* at 567-68.  *Clinchfield R. Co. v. Lynch*, similarly does not support PNC's position.  The only "novel" aspect about the economist's opinions in that case was his reliance on *official* U.S. Census Bureau data for a particular valuation, although such data was otherwise "regularly relied upon by economists in the field."  784 F.2d 545, 553-54 (4th Cir. 1986).  In contrast, here, Mr. Lundelius created a new damages methodology out of whole cloth, without any support in the law or literature for its use in trademark infringement cases.

PNC attempts to rationalize this untested theory by claiming that this is a novel case that requires a novel damages theory. *See* Opp. at 7. Notably, notwithstanding PNC's claimed novelty, Mr. Lundelius was not hindered in his ability to offer a traditional disgorgement analysis. *See* Lundelius Rep. ¶¶ 30; 36-50. Moreover, there is no reason to believe this case is novel in the slightest; start-ups with large valuation swings in their early years are far from uncommon, and PNC has not found a single case suggesting large changes in valuation necessitate a damages methodology created out of whole cloth in a straightforward trademark infringement dispute.

*Second*, PNC's argument that it was reliable for Mr. Lundelius to use the accounts of PNC's customers as the relevant "contributed" asset in his analysis is easily debunked. *See* Opp. at 7. As Mr. Lundelius concedes, PNC has no control over consumers' decisions to connect PNC bank accounts to fintech apps, and thus it has no control over the number of Plaid's occurrences. *See* Lundelius Tr. 49:4-7. And while PNC may own its trademarks, Mr. Lundelius does *not* attempt to value those marks. Lundelius Rep. ¶¶ 53-54. This disconnect between what Mr. Lundelius suggests is the asset attributable to PNC, and the asset he ultimately chooses to value, is the crux of the issue and a distinction PNC wholly fails to address in its opposition. *See* Opp. at 9.[5]

## II.     Mr. Lundelius's Disgorgement Opinion Is Unreliable.

Plaid's opening motion established that Mr. Lundelius's disgorgement analysis is based on erroneous assumptions that render it inadmissible. Mot. at 10-15. PNC centers its opposition to

---

[5]  PNC's representation that Dr. Chakraborty "also uses PNC's share of occurrences to allocate Plaid's profits to PNC" is an incomplete and misleading observation. *See* Opp. at 9. While Dr. Chakraborty also uses PNC occurrences as a starting point for her rebuttal of Mr. Lundelius's disgorgement analysis, that is where any similarity between the two experts ends. From there, Dr. Chakraborty relies on internal conversion studies to assess the portion of PNC's customer accounts for which the presence of PNC's logo was arguably material to their decision-making. *See, e.g.*, Corrected Expert Report of Dr. Maureen Chakraborty ¶¶ 10-11, ECF No. 248-3. And nowhere in her report does she agree that using occurrences to attribute a portion of Plaid's *valuation* to PNC is at all appropriate.

this point on the burden of proof in Lanham Act cases. Opp. at 10-11. But the burden of proof is not at issue here, nor is it dispositive when assessing the admissibility of Mr. Lundelius's disgorgement opinion under Rule 702.

There is no question that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). However, it is equally undebatable—and the authority cited by PNC clearly supports— that only sales "attributable to" Plaid's use of PNC's marks are recoverable. *See Banjo Buddies, Inc.*, 399 F.3d at 178 (focusing on "the benefits of [defendant]'s infringement"); *Max Rack*, 40 F.4th at 472 ("It would seem dubious to claim that [plaintiff] could satisfy its initial burden merely by introducing [defendant]'s total companywide sales data and thereby shift to [defendant] the burden to disprove that its infringement affected every dollar of revenue."); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("It was not enough to show [defendant]'s gross revenues from the sale of everything he sold,"); *Am. Eagle Outfitters, Inc. v. Walmart, Inc.*, 2023 WL 1778786, at *3 (W.D. Pa. Feb. 6, 2023) (considering only those "profits which are attributable to the use of the infringing mark") (internal quotations omitted).

Plaid's reliance on the Third Circuit's decision in *Gucci* also supports this foundational point. *See* Opp. at 11-12. The court in *Gucci* stated that a plaintiff is "only entitled to those profits attributable to the unlawful use of its mark." 354 F.3d at 242 (internal citation omitted). Not only is this statement in line with the cases cited by PNC, *see* Opp. at 11-12, but goes unchallenged by the court in *Banjo Buddies*, which simply cited to *Gucci* in a discussion of whether willfulness was still required after the 1999 amendment to the Lanham Act. *See* 399 F.3d at 175. Indeed, the court in *Banjo Buddies*, which PNC describes as "particularly instructive," *see* Opp. at 3, only awarded defendant's profits *tied to the infringing product*, *see Banjo Buddies*, 399 F.3d at 176-78.

8

Put simply, PNC's discussion of the burden shifting framework is a red herring that distracts from Plaid's Rule 702 argument seeking to exclude Mr. Lundelius's unreliable disgorgement opinion. The fundamental issue with Mr. Lundelius's disgorgement analysis is that he erroneously assumes that 100 percent of PNC's customer accounts are attributable to Plaid's use of the PNC logo, *even though there was ample evidence available contradicting that faulty assumption*. *See* Mot. at 11-14. It is this failure to consider and account for relevant and available evidence that renders Mr. Lundelius's opinion unreliable and therefore inadmissible under Rule 702. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 755 (3d Cir. 2000) (excluding expert opinion that was based on assumptions that "lack[ed] foundation in the record"); *see also Branch v. Temple University*, 2021 WL 2823071, at *3 (E.D. Pa. July 7, 2021).

PNC argues that Mr. Lundelius can ignore relevant evidence because experts can "assume causation," Opp. at 13, and need not adopt the other party's "view of the record," Opp. at 14. However, neither of these responses implicate Plaid's central point. It is uncontroversial that damages experts can assume causation, *i.e.,* that they can assume that liability has been proven. *See Spintouch, Inc. v. Outform, Inc.*, 2022 WL 17363902, at *6 (C.D. Cal. Sept. 28, 2022) (collecting cases). But that does not obviate the requirement in a Lanham Act case that damages be attributable to the alleged infringement. *See, e.g.*, *Max Rack*, 40 F.4th at 472. Nor does it permit experts to ignore evidence bearing on a key issue underpinning their analysis. *See In re Johnson & Johnson Talcum Powder Mktg., Sales Pracs. & Prods. Litig.*, 509 F. Supp. 3d 116, 194 (D.N.J. 2020) ("It is axiomatic that where an expert ignores evidence that is highly relevant to [his] conclusion, contrary to [his] own stated methodology, exclusion . . . is warranted.") (internal quotations omitted). Here, Mr. Lundelius assumes, without any support and without any consideration of evidence to the contrary, that all Plaid connections for PNC customers occurred

solely because Plaid used PNC's marks in Plaid Link. *See* Lundelius Tr. 83:18-23. Because that is contradicted by evidence on the point, *see* Mot. at 11-13, Mr. Lundelius's disgorgement analysis is unreliable and must be excluded.

### III. Mr. Lundelius's Actual Damages Calculations Are Unrelated To The Alleged Trademark Infringement At Issue In This Case.

PNC may not simply tack on damages for each and every potential grievance it has against Plaid by construing them as damages flowing from Plaid's alleged trademark infringement. That is particularly true where PNC's own cybersecurity expert agrees that the fraud episode that is the basis for *all* of Mr. Lundelius's actual damages calculations would have occurred even if Plaid had not included PNC's marks in Plaid Link. *See* Deposition of Mr. Todd Renner, 127:21-128:2, ECF No. 248-9. Any actual damages arising from that incident (even if PNC could prove Plaid, and not PNC or any third parties, was at fault) are not properly attributable to Plaid's alleged use of PNC's marks in Plaid Link. *See Am. Eagle Outfitters, Inc.*, 2023 WL 1778786, at *3.

Mr. Lundelius also makes the same error in his actual damages analysis that he makes in his disgorgement analysis—he attributes damages from *all* PNC customers whose accounts were linked using Plaid, without any showing that the connection was because of the presence of PNC's marks in Plaid Link. *See, e.g.*, Lundelius Rep. ¶¶ 32, 72. Mr. Lundelius fails to discuss or otherwise consider that users would have connected their PNC accounts to fintech apps using Plaid Link even if PNC's marks were not shown. *See id.* ¶¶ 64-91. This utter disregard for whether PNC occurrences are attributable to Plaid's use of PNC's marks is fatal.

### CONCLUSION

For these reasons, the Court should grant Plaid's motion to exclude the opinions of Mr. Charles Lundelius.

Dated: March 25, 2024

Respectfully submitted,

*/s/ Jeremy Barber*
Jeremy Barber (*pro hac vice*)
Ralia Polechronis (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
130 W 42nd Street, Floor 24
New York, NY 10036
(212) 294–8929 (phone)
(202) 847–4005 (fax)
Email: jbarber@wilkinsonstekloff.com
Email: rpolechronis@wilkinsonstekloff.com

Beth Wilkinson (*pro hac vice*)
Hannah Bedard (*pro hac vice*)
Alison Zoschak (*pro hac vice*)
Mikaela Meyer (*pro hac vice*)
Robert Laird (*pro hac vice*)
**WILKINSON STEKLOFF LLP**
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847–4000 (phone)
(202) 847–4005 (fax)
Email: bwilkinson@wilkinsonstekloff.com
Email: hbedard@wilkinsonstekloff.com
Email: azoschak@wilkinsonstekloff.com
Email: mmeyer@wilkinsonstekloff.com
Email: rlaird@wilkinsonstekloff.com

*Counsel for Defendant Plaid Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 25, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Jeremy Barber
Jeremy Barber